Conrad S. CARUSO, Plaintiff,

v.

PEAT, MARWICK, MITCHELL & CO., Defendant.

No. 86 Civ. 3408 (JMW).

United States District Court, S.D. New York.

July 14, 1987.

Judith P. Vladeck, Joseph J. Garcia and Laura S. Schnell, Vladeck, Waldman, Elias, & Engelhard, P.C., New York City, for plaintiff.

Robert L. Williams, Susan Anspach and Deborah Reik, E.E.O.C., New York City, for amicus curiae.

Thomas J. Kavaler, Samuel Estreicher and Neil W. Silberblatt, Cahill, Gordon & Reindel, New York City, for defendant.

## OPINION

WALKER, District Judge:

## INTRODUCTION

Plaintiff Conrad S. Caruso ("Caruso") has brought the instant age discrimination action against Defendant Peat, Marwick, Mitchell & Co. ("Peat Marwick"), his former employer. Defendant moves to dismiss, alleging that Caruso's status as a partner bars his invocation as an "employee" of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.[1] For the reasons set forth below, defendant's motion to dismiss is denied.

1. The Equal Employment Opportunity Commission has filed an amicus curiae brief in opposition to defendant's motion to dismiss.

2. Peat Marwick actually employed plaintiff as a "principal," rather than a "partner." However,

## STATEMENT OF FACTS

Defendant Peat Marwick is a major American accounting and consulting firm, employing several thousand professionals and consultants in more than 100 offices. About 1,350 of these accountants and consultants are employed as partners.

Peat Marwick is controlled by a 21–member board of directors. Among its policy-making duties, the board determines those Peat Marwick employees who the firm will nominate as partners. This board's policy decisions are implemented by a six-tier management hierarchy, ranging from the Chief Executive Officer, who reports directly to the board, to Partners in Charge, who are responsible for routine administrative decisions at each Peat Marwick office. About 300 of the firm's 1,350 partners hold some form of management position. The firm's New York office, where plaintiff worked, employed 128 partners. Thirty-six of these partners held management positions. Plaintiff did not hold one of these positions.

Plaintiff Caruso's career with Peat Marwick began in May 1969, when the Management Consulting Department of defendant's New York office hired him as a senior consultant. In 1970, Peat Marwick promoted Caruso to the position of manager. Caruso was promoted to partner in 1980.[2] Plaintiff's duties and responsibilities changed little after each promotion, including his promotion to partner. As a partner, plaintiff was allowed to make some discretionary decisions on behalf of his clients, but more typically plaintiff would ask a member of defendant's management, such as the Partner in Charge, to ratify or reject his recommendations.

During his tenure as a Peat Marwick partner, plaintiff was required to submit time sheets every two weeks, showing the number of hours he had worked for various accounts. Plaintiff received five weeks of vacation each year—one more week than

the only distinction between these two terms, as used by Peat Marwick, is that partners are responsible for accounting duties and clients, while principals are responsible for consulting work.

he had received prior to his appointment as a partner. Each year, plaintiff was subject to a formal job performance evaluation given by the Partner in Charge of the New York office.

Plaintiff could not make any personnel decisions on his own initiative. In fact, plaintiff's only formal authority with respect to employment decisions was the power to block a partnership appointment. Plaintiff's principal means of input on personnel issues was to recommend changes to the Partner in Charge. Plaintiff made such recommendations prior to his promotion from manager to partner at Peat Marwick, and the weight given his recommendations apparently changed little after his promotion to partner. Plaintiff and other non-management partners could not question a management request that one of their colleagues resign.

Peat Marwick partners do not hold any ownership interest in the firm. Partners receive a base salary of about $25,000, with additional compensation derived from firm profits and determined by the number of "units" assigned to each partner. Depending on their status with the firm, Peat Marwick partners hold between 175 units and 3,300 units. The number of units held by a partner also determines his voting power on those issues that the Board of Directors submit for a vote of the entire partnership.

During his partnership tenure with Peat Marwick, plaintiff held no more than 350 units. Virtually all of the 300 Peat Marwick partners employed in management positions held at least 1,500 units.

In December 1985, the Partner in Charge of Peat Marwick's New York office asked Caruso to resign from the firm. Defendant alleges that Caruso was asked to resign because he did not bring a sufficient number of new clients to the firm. When plaintiff was asked to resign in 1985, he was 50 years old.

Plaintiff agreed to resign, and left Peat Marwick by December 31, 1985. After this date, plaintiff received occasional work as an independent consultant for the firm.

Almost immediately after his resignation from Peat Marwick, plaintiff filed an age discrimination suit with both the New York State Division of Human Rights, and with the Equal Employment Opportunity Commission. Peat Marwick discontinued Caruso's employment as an outside consultant on May 9, 1986.

On May 21, 1986, Caruso filed the instant amended complaint, alleging principally that defendant's decision to ask for his resignation constituted unlawful age discrimination. Plaintiff's amended complaint also alleges that Peat Marwick unlawfully discontinued plaintiff's outside consulting work in retaliation for plaintiff's age discrimination action against the firm.

## DISCUSSION

1. *A "Partner's" Ability to Bring an ADEA Action.*

■ A plaintiff may bring a federal age discrimination action under the ADEA only where he is an employee suing his former or current employer. 29 U.S.C. § 623(a); *Hyland v. New Haven Radiology Associates, P.C.,* 794 F.2d 793, 796 (2d Cir.1986). It is well settled that an individual who has acted as a central corporate decisionmaker or controlling owner does not fall within the ADEA definition of "employee," and thus cannot bring an action against the company he once managed or owned. *See, e.g., Hyland v. New Haven Radiology Associates, P.C., supra,* 794 F.2d at 797; *McGraw v. Warren County Oil Co.,* 707 F.2d 990, 991 (8th Cir.1983) (corporate directors are not "employees," as the term is used in the ADEA). On the other hand, the mere fact that an employee holds a job carrying an impressive title does not mean that this employee loses the protection of the ADEA. *See, e.g., Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 726–27 (2d Cir.1984) (chief labor counsel, whose duties were primarily those of "an attorney doing legal work," qualifies as an employee who may bring an ADEA action); *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914 (2d Cir.1981) (corporate vice president may bring an ADEA action).

Defendant argues for a *per se* rule that an individual denoted as a "partner" falls outside the ADEA definition of employee. In other words, defendant contends that since Peat Marwick employed Caruso under the title of "partner," Caruso cannot sue his former employer for age discrimination.

Recent decisions are inconsistent with defendant's argument for a *per se* rule holding that the ADEA cannot apply to individuals employed under the title of partner. For example, in *Hyland v. New Haven Radiology Associates, P.C., supra,* 794 F.2d at 797–78, the Second Circuit Court of Appeals reversed the dismissal of a plaintiff's age discrimination claim, holding that the employer's classification of plaintiff as a partner was not controlling. The *Hyland* Court began its analysis with the proposition: "It is generally accepted that the benefits of the antidiscrimination statutes ... do not extend to those properly classified as partners." *Id.* at 797. However, the Court continued that an employer's mere classification of an individual as a partner is not dispositive, and that courts instead must look to that individual's actual duties and status. *Id.* at 797–98. The Court concluded that even though the *Hyland* plaintiff had held a 20% ownership interest in the defendant corporation, he could nonetheless bring suit as an employee under the ADEA, since "[t]here was nothing inconsistent between his proprietary interest ... and the corporate employ-

ment relationship he held." *Id.* at 798. *See also E.E.O.C. v. Peat, Marwick, Mitchell and Co.,* 589 F.Supp. 534, 539 (E.D.Mo. 1984), *aff'd,* 775 F.2d 928 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986) (authorizing EEOC bringing ADEA action to issue subpeona, since "it is possible that respondent may label some of its members as 'partners' when, in fact, those members may not fit within the traditional definition of the term"); *Peterson v. Eppler,* 67 N.Y.S.2d 498 (Sup.Ct.N.Y.Co.1946) (describing "junior partner" who received a fixed salary as an employee, rather than a partner).

Rejection of the *per se* partnership exemption urged by defendant receives further support from Justice Lewis Powell's concurrence in *Hishon v. King & Spalding,* 467 U.S. 69, 79, 104 S.Ct. 2229, 2235, 81 L.Ed.2d 59 (1984). In joining the majority holding that a law firm associate could bring a sex discrimination action under Title VII, 42 U.S.C. § 2000e–2(a),[3] Justice Powell's concurrence urged that anti-discrimination statutes should not apply "to the management of a law firm by its partners." *Id.* at 79, 104 S.Ct. at 2236. However, Justice Powell also cautioned: "Of course, an employer may not evade the strictures of Title VII simply by labelling its employees as 'partners.'" *Id.* at n. 2.[4]

Justice Powell's concurrence highlights the obvious weakness in defendant's argument for a *per se* rule exempting individu-

---

**3.** The fact that *Hishon* was brought as a sex discrimination action under Title VII, rather than an age discrimination case under the ADEA, does not make this decision of any less relevance to the instant case. Since the ADEA and Title VII "have a similar purpose—to stamp out discrimination in various forms—cases construing the definitional provisions of one are persuasive authority when interpreting the others." *Hyland v. New Haven Radiology Associates, P.C., supra,* 794 F.2d at 796; *Geller v. Markham,* 635 F.2d 1027, 1032 (2d Cir.1980).

**4.** Cases cited defendant in support of its *per se* argument are not persuasive. For example, the brief opinion in *Burke v. Friedman,* 556 F.2d 867 (7th Cir.1977) does not discuss whether a court hearing an ADEA case should inquire if an employer's description of the plaintiff as a "partner" was an accurate reflection of that in-

dividual's status and functions within the corporation. This issue also was not discussed in *E.E.O.C. v. Dowd & Dowd,* 736 F.2d 1177 (7th Cir.1984), where the Seventh Circuit Court of Appeals held that a shareholder in a professional corporation was not an employee for Title VII purposes. Further, the Second Circuit Court of Appeals recently suggested that *Dowd* is not controlling precedent in this circuit. *Hyland v. New Haven Radiology Associates, P.C., supra,* 794 F.2d at 797–98.

In a one-page opinion cited by defendant, a federal district judge dismissed an ADEA claim brought by an accounting firm partner, holding that such an individual could not qualify as an employee under the ADEA. *Holland v. Ernst & Whinney,* 35 Empl. Prac. Dec. (CCH) ¶ 34, 653 (N.D.Ala.1984) [Available on WESTLAW, DCT database]. This Court declines to follow the *Holland* decision.

als classified as partners from ADEA protection. Such a rule would allow employers to strip employees of their ADEA rights simply by denoting all employees as "partners," without giving these employees any actual decisionmaking authority or job security. Also, adoption of the *per se* rule advocated by defendant would prevent invocation of the ADEA by physicians, accountants, attorneys, and other professionals whose employers traditionally have organized their businesses as partnerships. Nothing in the legislative history of the ADEA or the other anti-discrimination statutes suggests that these mandates should not apply to such professions. *See, e.g., Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (attorney may bring sex discrimination claim against law firm); *Lucido v. Cravath, Swaine & Moore,* 425 F.Supp. 123, 127 n. 3 (S.D.N.Y.1977) (noting Senate rejection of amendment that would have exempted physicians from Title VII coverage); *E.E.O.C. v. Rinella & Rinella,* 401 F.Supp. 175, 180–81 (N.D.Ill.1975). To the contrary, "[t]he Age Discrimination in Employment Act is remedial in nature and should be given a liberal interpretation in order to effectuate the purpose of the Act." *Zimmerman v. North American Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983); *accord Lucido v. Cravath, Swaine & Moore,* 425 F.Supp. 123, 126 (S.D.N.Y.1977).[5]

■ Accordingly, this Court declines to adopt the *per se* rule urged by defendant, which would place any individual denoted as a "partner" outside the scope of the ADEA.

2. *Plaintiff's Status as a "Partner".*

■ Having rejected defendant's *per se* argument, the Court must determine whether plaintiff in the instant case falls within the ADEA definition of employee.

As discussed above, if plaintiff acted as a central corporate decisionmaker or owner, as the term "partner" is traditionally conceived, plaintiff could not qualify as an employee under the ADEA. However, if plaintiff's duties at Peat Marwick more closely resembled those of a typical salaried worker, with little role in corporate decisionmaking, plaintiff may bring an action under the ADEA. For the reasons set forth below, the Court finds that plaintiff falls within the latter category.

The Court has found prior no decision that has enunciated a systematic test for distinguishing a partner from an employee for purposes of the ADEA. In addition, the existence of partnership traditionally has not been determined from a review of any single factor, "since all the elements of the relationship must be considered." *Ramirez v. Goldberg,* 82 A.D.2d 850, 852, 439 N.Y.S.2d 959, 961 (2d Dep't 1981). *See also State v. Houston Lighting & Power Co.,* 609 S.W.2d 263, 267 (Tex.Ct.App.1980); *Gangl v. Gangl,* 281 N.W.2d 574, 579 (N.D. 1979); A. Bromberg, *Crane & Bromberg on Partnership* 30–38 (1968). However, a useful point of departure in developing such a test is provided by the Second Circuit Court of Appeals decision in *Hyland v. New Haven Radiology Associates, P.C., supra.* Quoting from an Equal Employment Opportunity Commission decision, the *Hyland* court wrote:

> In determining whether the individual is a partner or employee in a particular case, ... [courts should] consider relevant factors including, but not limited to, the individual's ability to control and operate the business and to determine compensation and the administration of profits and losses.

*Id.* at 797.

This statement focuses on one of the most important characteristics traditionally

---

**5.** Defendant also argues that legal challenges to personnel decisions effecting "partners" will violate the first amendment freedom of association rights of partnership members. The Supreme Court has rejected this contention, writing that "[i]nvidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional protections." *Hishon v. King & Spalding,* 467 U.S. 69, 78, 104 S.Ct. 2229, 2235, 81 L.Ed.2d 59 (1984) (quoting *Norwood v. Harrison,* 413 U.S. 455, 470, 93 S.Ct. 2804, 2813, 37 L.Ed.2d 723 (1973)). *See also Lucido v. Cravath, Swaine & Moore,* 425 F.Supp. 123, 129 (S.D.N.Y.1977).

associated with an individual's status as a partner: the "ability to control and operate the business." Conversely, the title "partner" is not normally applied to an individual whose employment duties are unilaterally dictated by another member of a business. *See Amarnare v. Merrill Lynch, Pierce, Fenner & Smith,* 611 F.Supp. 344, 348 (S.D.N.Y.1984) ("When an employer has the right to control the means and manner of an individual's performance, as Merrill Lynch allegedly had with regard to Amarnare, an employer-employee relationship is likely to exist."); *E.E.O.C. v. Rinella & Rinella,* 401 F.Supp. 175, 180–81 (N.D.Ill.1975).

This conception of a partner as one who participates in business policy decisions is consistent with previous discussions of partnership law. For example, in an action asserting various contract and tort claims arising out of the alleged dissolution of a partnership, a federal court was required to determine whether a partnership had existed between the litigants. The court concluded that the parties had formed a partnership, and based this decision in part on a finding that there was "a joint right of control over the business...." *Hayes v. Irwin,* 541 F.Supp. 397, 415–16 (N.D.Ga. 1982), *aff'd mem.,* 729 F.2d 1466 (11th Cir. 1984), *reh'g denied,* 733 F.2d 908 (11th Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984). Other courts and commentators have adopted a similar view. *See, e.g., Bellis v. United States,* 417 U.S. 85, 96, 94 S.Ct. 2179, 2187, 40 L.Ed.2d 678 (1974); *Wroblewski v. Brucher,* 550 F.Supp. 742, 747 (W.D.Okla.1982) ("[I]t appears to be settled in California that one of the essential elements of a true partnership is that the partner has some control and management over the enterprise."); *Alleva v. Alleva Dairy,* 514 N.Y. S.2d 422, 423 (2d Dep't 1987).

However, at least two other characteristics traditionally have distinguished partners from employees. First, partners typically receive their compensation as a percentage of their firm's profits, rather than in the form of a fixed hourly wage or weekly salary. As one commentator has written: "Profit sharing is the primary at-

tribute of partnership." A. Bromberg, *Crane and Bromberg on Partnership* 66 (1968). *See also Bellis v. United States,* 417 U.S. 85, 96 n. 4, 94 S.Ct. 2179, 2187 n. 4, 40 L.Ed.2d 678 (1974); *Tenney v. Insurance Company of North America,* 409 F.Supp. 746, 749 (S.D.N.Y.1975) ("the prorata sharing of profits and losses of the enterprise" constitutes a "significant indicia of the existence of a partnership"); *Peterson v. Eppler,* 67 N.Y.S.2d 498 (Sup.Ct. N.Y.Co.1946).

Second, a partner traditionally works as a permanent employee of his firm. The typical firm may not fire a partner or otherwise terminate his employment merely because of disappointment with the quantity or quality of his work, but may only remove the partner in extraordinary circumstances. For example, in the case of *Snell v. J.C. Turner Lumber Co.,* 285 F. 356 (2d Cir.1922), *cert. denied,* 261 U.S. 616, 43 S.Ct. 362, 67 L.Ed.2d 828 (1923) plaintiffs brought a breach of contract action for damages allegedly owed by defendant under a partnership agreement. However, the Second Circuit Court of Appeals held that no partnership agreement had been formed, since plaintiffs' employment contract "gave the right to the defendant to dismiss the plaintiffs if their services were not to their satisfaction." *Id.* at 358. Other case law confirms this holding that a relatively high level of job security constitutes one of the attributes of partnership. *See Infusaid Corp. v. Intermedics Infusaid, Inc.,* 739 F.2d 661, 670 (1st Cir.1984) (discussing remedies available to partner in the event of his "ouster"); *Georgia Casualty Co. v. Hoage,* 59 F.2d 870, 873 (D.C. Cir.1932).

To summarize, the Court holds the view that a determination of an individual's status as an employee or a partner, for purposes of an ADEA action, should include at least the following three considerations:

(1) The extent of the individual's ability to control and operate his business; (2) The extent to which an individual's compensation is calculated as a percentage of business profits; and (3) The ex-

tent of the individual's employment security.

An application of this test to the instant case leaves little question that plaintiff qualifies as an employee, rather than a partner. Caruso largely lacked any control over even his own office in New York, which was operated by the Partner in Charge, much less Peat Marwick's business as a whole, which was managed by a board of directors separated from plaintiff by six levels of hierarchy. Plaintiff possessed authority to make discretionary decisions only with respect to his own relatively few clients, and even on these decisions he typically sought the approval of the Partner in Charge or another management-level partner.

Plaintiff's only formal authority with respect to Peat Marwick personnel decisions was his ability to block the appointment of new partners. Plaintiff was not consulted on which employees should be nominated for partnership. Plaintiff could not prevent the termination of any partner or non-partner, and, indeed, largely lacked a voice in any such decision. As to support personnel, Caruso only could recommend changes to the Partner in Charge. In short, plaintiff had almost no control over the operation of defendant's business.

Neither party has presented facts showing precisely to what extent plaintiff's salary was based on Peat Marwick's profits. However, the fact that plaintiff held no more than 350 "units," a relatively low figure, suggests that plaintiff's salary would vary little with the firm's profits.

As to the third factor, the permanency of plaintiff's employment, plaintiff has shown that Peat Marwick in no way considered him a permanent member of the firm. Plaintiff received annual evaluations, during which his job performance was closely scrutinized. These evaluations clearly were not a routine administrative process, or a benevolent attempt to assist plaintiff. Indeed, it is defendant's position in this case that if Caruso's performance did not meet certain standards, Peat Marwick could ask for his resignation—and did so because of Caruso's inadequate perform-

ance. *See Lucido v. Cravath, Swaine & Moore,* 425 F.Supp. 123, 128 (S.D.N.Y. 1977).

The Court concludes that plaintiff properly qualifies as an employee, rather than a partner, and thus may invoke the ADEA. Accordingly, the motion to dismiss plaintiff's principal ADEA claim, arising out of his 1985 resignation from Peat Marwick, is denied.

3. *Retaliatory Action.*

In addition to his principal claim, Caruso also alleges that Peat Marwick's May 1986 decision to discontinue employing Caruso as an outside consultant constituted retaliatory discrimination, unlawful under the ADEA. *See* 29 U.S.C. § 623(d); *Powell v. Rockwell International Corp.,* 788 F.2d 279, 282–83 (5th Cir.1986). In reviewing claims of retaliatory discrimination, the Second Circuit Court of Appeals has urged district courts to take "a flexible approach" in order to "furnish a remedy against discrimination in employment, no matter what specific form the invidious practice takes...." *Silver v. Mohasco,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

Defendant moves to dismiss Caruso's retaliatory discrimination claim on the ground that, at the time of the alleged retaliation, plaintiff merely worked as an outside consultant, and thus was no longer an "employee" who could challenge his termination under the ADEA.

■ Defendant's argument is meritless. Federal antidiscrimination statutes, such as the ADEA, prohibit "discrimination related to or arising out of an employment relationship, whether or not the person discriminated against is an employee at the time of the discriminatory conduct." *Pantchenko v. C.B. Dolge Co.,* 581 F.2d 1052, 1055 (2d Cir.1978); *accord Silver v. Mohasco Corp., supra,* 602 F.2d at 1090. A discontinuation of short-term contracting or consulting work in response to a suit alleging discrimination clearly constitutes unlawful retaliatory discrimination. *Grant v. Bethlehem*

*Steel Corp.,* 622 F.2d 43 (2d Cir.1980). *See also Silver v. Mohasco Corp., supra,* 602 F.2d at 1090–91 ("Charges of post-employment blacklisting fall within the broad remedial scope of Title VII."); *Weise v. Syracuse University,* 522 F.2d 397, 409–10 (2d Cir.1975) (allegation that short-term teaching jobs were withheld in retaliation for earlier sex discrimination suits stated cause of action under Title VII).

Defendants motion to dismiss plaintiff's retaliatory discrimination claim is denied.

## CONCLUSION

Accordingly, defendant's motion to dismiss is denied in all respects.

SO ORDERED.