**Conrad S. CARUSO, Plaintiff,**

v.

**PEAT, MARWICK, MITCHELL & COMPANY, Defendant.**

**No. 86 Civ. 3408 (JMW).**

United States District Court,
S.D. New York.

July 13, 1989.

On Motion to Certify for Interlocutory Appeal Aug. 28, 1989.

Judith P. Vladeck, Joseph J. Garcia and Laura S. Schnell, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiff.

Thomas J. Kavaler, Samuel Estreicher and Neil W. Silberblatt, Cahill, Gordon & Reindel, New York City, for defendant.

## MEMORANDUM AND ORDER

WALKER, District Judge:

Plaintiff Conrad S. Caruso ("Caruso"), formerly a principal employed by defendant Peat, Marwick, Mitchell & Co. ("PMM"), alleges that defendant violated the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq.*, which makes it unlawful for an employer to discriminate against an "employee" on the basis of age. *Id.* at § 623(a)(1). By Memorandum and Order dated July 31, 1987, the Court denied PMM's prior motion for summary judgment. PMM now moves for partial summary judgment, alleging that newly-discovered facts demonstrate that plaintiff is not an employee within the meaning of the ADEA. The Court disagrees and thus denies defendant's motion for partial summary judgment.

## I. BACKGROUND

### A. *The Underlying Claim*

PMM is a public accounting and consulting firm. It employs several thousand professionals, about 1,350 of whom are partners or principals. Partners are certified public accountants and have slightly different rights and responsibilities under PMM's Articles of Partnership than do principals. Principals are prohibited from (1) holding themselves out to the public as partners, (2) contributing to or having an interest in the capital of PMM other than making subordinated loans in the form of deposit accounts, (3) holding the positions of Chairman and Deputy Chairman, and (4) signing the firm's name on any report that expresses an opinion as to a client's financial statements. Approximately 300 of the 1,350 partners and principals hold management positions.

In 1969, plaintiff was hired by PMM as a Senior Consultant. In 1970 he was promoted to the position of Manager, in which he remained until 1980. During his tenure of employment, plaintiff received a salary and occasional bonuses, and was subject to termination at will. It is undisputed that he had no formal role in the management of the firm or the New York office in which he worked. As a Manager, he proposed hiring and other personnel decisions concerning his office, but he lacked the authority to make such decisions himself. Moreover, he could not be held personally responsible for the liabilities of PMM.

In July of 1980, plaintiff was made a principal of PMM. Plaintiff alleges that his duties and the nature of his employment changed little with this mere change in title. For instance, he continued to provide client services for the same clients. He further alleges that his level of responsibility and authority with respect to his office did not change significantly. However, the nature of his relationship with PMM changed in some limited respects.

As a principal, plaintiff was entitled to sign his name on certain reports so long as those reports did not express an opinion as to a client's financial position. He became potentially liable for PMM's debts. Fur-

thermore, he was allocated 250 so-called "units of interest" in PMM. This number determined his share in the profits of the firm, and thus his compensation. The firm based plaintiff's allocation on his income as a Manager and his level of responsibility. Individual partners and principals of PMM hold between 175 and 3,300 units of interest in the firm. The allocation of units was subject to change upon periodic review of his performance, responsibility, and tenure with the firm. Indeed, the firm increased plaintiff's share to 350 by 1985.

Plaintiff also gained the right to vote in PMM's general elections. His vote was not weighted equally with other partners and principals, however, but rather was determined by his units of interest in the firm. Moreover, plaintiff still lacked the authority to make personnel decisions in his own office. Instead, he continued to make recommendations on these matters to high level partners, and his influence remained relatively unchanged. He gained the right to recommend individuals for nomination into the partnership, for instance, but nominations were actually made by a special management committee.

In 1985, a senior partner asked plaintiff, then fifty years old, to resign from PMM. PMM's Articles of Partnership provide for challenges to requests for resignation, and involuntary resignation can be effected only upon a two-thirds vote of the partnership. Plaintiff alleges, however, that he was led to believe that no such procedure existed. He voluntarily resigned from PMM on December 31, 1985.

At about the same time, plaintiff filed a charge against PMM with the New York State Division of Human Rights, invoking the protection of ADEA and New York's Human Rights Law, N.Y. Exec. Law §§ 290 et seq. (McKinney 1982 & Supp. 1988). In April of that year, plaintiff commenced the present lawsuit based solely on ADEA.

### B. PMM's Previous Motions

On July 11, 1986 PMM moved for judgment on the pleadings, claiming that one who enjoys the status of "partner" is not protected by ADEA, and that plaintiff was a partner at the time the cause of action arose. On July 14, 1987, this Court denied the motion. *Caruso v. Peat, Marwick, Mitchell & Co.*, 664 F.Supp. 144 (S.D.N.Y. 1987). The Court expressly declined to adopt a "per se" rule that would automatically exclude all persons labeled "partners" or "principals" from the protection of the statute. *Id.* at 147.

This Court concluded that a determination of whether an individual is an employee for purposes of an ADEA action must address several relevant factors, including, but not limited to, the individual's ability to control and operate the business, the extent to which his compensation is calculated as a percentage of business profits, and the extent of the individual's employment security. *Id.* at 148–150, *quoting Hyland v. New Haven Radiology Associates, P.C.*, 794 F.2d 793, 797 (2d Cir.1986), *cert. denied*, 479 U.S. 1069, 107 S.Ct. 961, 93 L.Ed.2d 1009 (1987). In *Hyland*, the Second Circuit listed three factors—an employee's ability to control the business, the relationship of his compensation to business profits, and the extent of his employment security—as essential for determining whether an individual may invoke the protection of ADEA.

This Court noted that ADEA affords no protection to an individual "employee" who acts as a central-decision maker, as does a traditional partner. However, if the partner's or principal's duties closely resemble those of a salaried employee, with only limited decision-making responsibilities, his title alone will not defeat an ADEA claim. *Id.* at 148. Moreover, the Court determined that an analysis of whether an individual is an employee for purposes of an ADEA action must address "all elements of the [employment] relationship." *Caruso*, 664 F.Supp. at 148 (*discussing Ramirez v. Goldberg*, 82 A.D.2d 850, 852, 439 N.Y. S.2d 959, 961 (2d Dep't 1981)). Assuming the truth of plaintiff's allegations, the Court found that plaintiff resembled an employee more than he did a traditional partner. The Court thus concluded that plaintiff fell within the scope of ADEA

and, consequently, denied defendant's motion.

PMM moved for reargument, relying primarily on the Tenth Circuit's decision in *Wheeler v. Main Hurdman*, 825 F.2d 257 (10th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). In that factually similar case, the Tenth Circuit rejected a plaintiff's ADEA claim. On August 3, 1987, however, this Court denied PMM's motion for reargument, emphasizing that in this Circuit courts must consider the *Hyland* factors and the individual's actual duties and terms of employment. *Caruso v. Peat, Marwick, Mitchell & Co.*, 664 F.Supp. at 147.

The Court dismissed the motion with the understanding that PMM remained free to make its present motion if discovery yielded facts which differed materially from those alleged by plaintiff and which were accepted by the Court in prior decisions. The parties proceeded with discovery limited to the issue of whether plaintiff was properly classified as a principal at the time defendant requested his resignation.

### C. The Present Motion

PMM now moves for partial summary judgment relying on a more complete factual record. On that basis, PMM alleges that plaintiff was not an employee according to the criteria set forth by the Court in its earlier decisions. PMM contends that plaintiff possessed and exercised the same powers and responsibilities, and had been subject to the same potential liabilities, as any other partner in the firm. PMM further argues that the facts relied upon by plaintiff in his attempt to characterize himself as an employee—procedures with respect to time sheets, vacation requests, performance evaluations, and review of client matters—were common to all partners and employees. For his part, plaintiff opposes PMM's motion, contending that the discovered facts bolster rather than contradict his original allegations.

## II. DISCUSSION

Summary judgment is appropriate, of course, only if no issue of material fact is in dispute. All reasonable inferences must be drawn, and all ambiguities resolved, in favor of the nonmoving party. *Patrick v. LaFerve*, 745 F.2d 153, 161 (2d Cir.1984); *Poklitar v. CBS, Inc.*, 652 F.Supp. 1023 (S.D.N.Y.1987). Even if the facts are undisputed, there must be no controversy as to the inferences to be drawn from them. *Schwabenbauer v. Board of Education*, 667 F.2d 305, 313 (2d Cir.1981).

On its present motion, PMM enumerates the facts which it alleges are undisputed and materially different from those taken as true by this Court in its prior denials of summary judgment: (1) all partners and principals of PMM have units of interest in the firm, which determine their share of profits and losses, capital contribution in the firm, and voting power; (2) as a principal, plaintiff could vote in PMM elections, recommend persons for nomination into the partnership, and veto a candidate's election; (3) as a principal, plaintiff paid the cost of his own insurance and his social security taxes; (4) all who work at PMM—ordinary employees, partners, and principals—are subject to the same procedures with respect to time sheets, vacation requests, and review of client matters; (5) upon his death, plaintiff's estate would have been entitled to his interest in any capital, deposit, drawing, unrealized receivables and deferred compensation from his accounts.

Defendant's most recent factual recitation, like its earlier efforts, does not warrant summary judgment. It fails to persuade the Court that it must alter its prior determinations. Moreover, contrary to PMM's contention, there are several material facts which remain in dispute. For these reasons, the Court cannot conclude that, as a matter of law, plaintiff stands beyond the scope of ADEA.

It still remains unclear whether plaintiff had anything more than a nominal role in the management of PMM. Defendant contends that PMM is a general partnership, whereas plaintiff contends that it is organized and operated as a corporation with a multi-tier management hierarchy. Discovery has not resolved this material dis-

pute. A partner is generally thought to participate in the operation and control of the enterprise.[1] As a principal, plaintiff largely lacked control of the New York office in which he worked, and had little or no control over the firm's national business. The decisions he made with respect to his own clients were subject to the approval of senior partners. As a practical matter, a board of directors—which was separated from plaintiff by no less than six levels of hierarchy—managed PMM. Moreover, plaintiff did not have the right to seek the positions of Chairman and Deputy Chairman. These factors suggest that plaintiff was not a true partner in the management of the firm.

As this Court explained in its prior ruling, the first *Hyland* factor concerns an employee's ability to control and operate the enterprise. Although plaintiff had the right to vote in PMM elections, he alleges that the issues were largely decided by upper level management, which merely presented its decisions for ratification by those employees who voted. Furthermore, plaintiff's vote was not weighted equally with those of other partners and principals. Each vote is weighted according to the voter's performance, responsibility, and tenure with PMM. Plaintiff held a relatively low number of units of interest in PMM, so his vote was relatively weak. Moreover, after his promotion to the position of principal, plaintiff continued to be responsible primarily for client services rather than corporate management. In this respect, too, plaintiff was more akin to an employee than a traditional partner.

It is still not clear that the method of compensation—the second *Hyland* factor—employed by PMM more fairly characterizes a partnership rather than a typical employer-employee relationship. Partners generally receive a percentage of the firm's profits rather than a fixed salary. *See Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Tenney v. Insurance Company of North America*, 409 F.Supp. 746, 749 (S.D.N.Y.1975). Defendant argues that PMM's profits determined plaintiff's compensation, as would the profit of a partnership. However, plaintiff argues that his compensation was based on performance, much like that of a traditional employee. Indeed, units of interest were allocated on the basis of performance, and subject to change upon favorable or unfavorable review of plaintiff's work.

The third *Hyland* factor examines a plaintiff's employment security. It remains unclear whether this plaintiff's security was significantly greater than that of any other employee of PMM. A partner is generally considered a permanent employee, who cannot be fired or released except in extraordinary circumstances. *See Caruso*, 664 F.Supp. at 149; *See also Snell v. J.C. Turner Lumber Co.*, 285 F. 356 (2d Cir.1922), *cert. denied*, 261 U.S. 616, 43 S.Ct. 362, 67 L.Ed. 828 (1923). PMM routinely evaluated each partner's performance for the purpose of requesting the resignation of sub-standard performers, and it was not uncommon to secure resignations in this manner. As stressed by PMM, involuntary resignation could be effected only upon a two-thirds vote of the partnership. Although this provision is included in the Partnership Agreement, plaintiff alleges that he was instructed that he had no recourse. He never requested that a vote be held, nor was such a vote taken. Plaintiff was dismissed much like an ordinary employee. Even if plaintiff had contested his "resignation," it is doubtful that a general election would have amounted to anything more than ratification of a settled issue. *See* Caruso Aff. ¶¶ 3, 14, and 24.

■ In addition to the factors outlined in *Hyland*, other aspects of plaintiff's relationship with PMM are both material and relevant and thus merit further attention. A mere distinction in title does not dispositively determine whether an individual is an employee for purposes of ADEA. *See*

---

1. *See, e.g., Bellis v. United States*, 417 U.S. 85, 96, 94 S.Ct. 2179, 2187, 40 L.Ed.2d 678 (1974); *Hayes v. Irwin*, 541 F.Supp. 397, 415–416 (N.D. Ga.1982), aff'd mem., 729 F.2d 1466 (11th Cir.

1984), *reh'g denied*, 733 F.2d 908 (11th Cir.1984), *cert. denied*, 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984).

*e.g. Whittlesey v. Union Carbide Corp.,* 567 F.Supp. 1320 (S.D.N.Y.1983), *aff'd* 742 F.2d 724 (2d Cir.1984). *See also Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (Powell, J., concurring). Plaintiff contends that partners and principals are not of equal stature within the PMM organization, and the distinctions he notes—see supra at 219 raise significant questions as to his responsibilities and role at PMM. These material factual issues cannot be dismissed on defendant's present motion.

### III. CONCLUSION

Accordingly, for the reasons set forth above, defendant's motion is denied. A pre-trial conference in this matter is scheduled for 10:00 a.m. on July 28, 1989.

SO ORDERED.

### On Motion To Certify For Interlocutory Appeal

■ By letter dated August 1, 1989, defendant requests, pursuant to 28 U.S.C. § 1292(b), that the Court certify for interlocutory appeal its July 13, 1989 Order denying defendant's motion for summary judgment. Before a district court certifies an order for interlocutory appeal, the movant must demonstrate "[first, that the order at issue] involves a controlling question of law, [second,] as to which there is a substantial ground for a difference of opinion, and [third,] that [an] immediate appeal could materially advance the ultimate termination of the litigation." *See McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.,* 849 F.2d 761, 763 (2d Cir.1988); 28 U.S.C. § 1292(b). Certification is the exception and not the rule, and is left to the sound discretion of the trial court. *See e.g., Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 10–11, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1; *Vekris v. Peoples Express Airlines, Inc.,* 707 F.Supp. 679, 682 (S.D.N.Y.1988).

This Court's application of the Second Circuit's decision in *Hyland v. New Haven Radiology Associates,* 794 F.2d 793 (1986) is not "open to substantial doubt." *See Cicero v. Olgiati,* 426 F.Supp. 1213, 1216 (S.D.N.Y.1976). In that case, the Second Circuit found that there can be no inquiry into the facts to determine whether an employee may be deemed a partner once an employer has elected the corporate form of operation. The court, however, specifically noted that "[i]t is one thing to apply an economic realities test to distinguish an employee from an independent contractor or partner, but it is quite another to apply the test in an attempt to identify as partner one associated with a corporate enterprise." 794 F.2d at 798. Contrary to defendant's strenuous objections, which have been considered and rejected by this court on three prior occasions, the Second Circuit in *Hyland* clearly did not preclude an inquiry into the status of an employee where a partnership is the form of business. While the Second Circuit in *Hyland* stated that a court cannot "ignore[ ] a form of business organization freely chosen and established," *Id.,* it allowed for a more detailed factual inquiry to distinguish partners from employees.

In denying defendants' motion for summary judgment, this Court, in accordance with *Hyland,* did not ignore the form of business organization, but engaged in a factual inquiry to determine whether, as a matter of law, plaintiff was not an employee. Defendant mistakenly suggests that the Court's decision turned on Caruso's lack of individual ability to control the partnership business. Rather than relying upon any single factor, the Court considered several aspects of plaintiff's relationship with defendant, all of which presented material factual issues that could not be dismissed on defendant's motion for summary judgment. Thus, this Court's July 13 Order was fully consistent with *Hyland.*

To say that this Court applied *Hyland* appropriately is not to say that this case presents no controlling issues of law for which there is substantial ground for disagreement. The Second Circuit in *Hyland* did not squarely reach the issue of whether and when individuals labeled "partners" may bring actions under the federal Age Discrimination in Employment Act. This

issue is significant, not only to the present case but also to many present and potential litigants, and there may be substantial ground for difference of opinion. Further, resolution of this issue, as presented in the context of this case, will materially advance the ultimate termination of this litigation. Therefore, the Court certifies its July 13, 1989 Order for an interlocutory appeal to the United States Court of Appeals for the Second Circuit.

SO ORDERED.