**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**JOHNSON & HIGGINS, INC., Defendant.**

**No. 93 Civ. 5481 (LBS).**

United States District Court,
S.D. New York.

June 12, 1995.

E.E.O.C., New York City (James L. Lee, Anna M. Stathis, Sonya A. LeCount, of counsel), for plaintiff.

Sullivan & Cromwell, New York City (John F. Cannon, Robin D. Fessel, of counsel), for defendant.

## OPINION

SAND, District Judge.

Plaintiff Equal Employment Opportunity Commission ("EEOC") brings this action against defendant Johnson and Higgins ("J & H") pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Agreeing with plaintiff's contention that J & H's mandatory retirement policy, which requires those of its employees sitting on the Board of Directors to retire at the earlier of age 62, or age 60 with 15 years of service, violates the ADEA, we grant plaintiff's motion for summary judgment.

## BACKGROUND

Defendant J & H is a global insurance brokerage and employee benefits consulting firm. A privately owned corporation, J & H is organized and existing under the laws of the State of New Jersey with its principal place of business in New York City.

J & H's Charter and By-laws provide that the business and affairs of J & H shall be managed by its Board of Directors, which consists of between 20 and 44 members. Affidavit of Gardner M. Mundy Dated Feb. 1, 1995 ("Mundy Aff.") at ¶ 6. Each Director of J & H must own at least 500 shares of its capital stock, and a Director who ceases to own that number of shares automatically ceases to be a Director. Moreover, when a Director leaves the Board for any reason, he is required to surrender his stock, which is allocated to other Directors. The stock is surrendered pursuant to contracts in which (i) J & H promises to pay during the next ten years the dividends that would have been payable if the Director still held the stock (meaning that the Directors to whom stock is reallocated receive no dividends on it during this ten-year period) and (ii) the outgoing Director promises not to compete with J & H

and to be available as a consultant. Mundy Aff. ¶¶ 15–17.

At all relevant times, no individual has been elected a Director of J & H who was not an officer of J & H, or of one or more of its subsidiaries, and actively engaged in its service at the time of his or her election. *Id.* ¶¶ 9, 12. Candidates for election are nominated by the Chairman of the Board after consultation with the other Directors. According to defendant, qualifications for becoming a Director include "outstanding performance" of one's senior-level duties, as well as an "effectiveness and contribution to the firm in his or her current and possible future roles [that] would be significantly enhanced by the added authority and status that a Directorship at J & H entails." *Id.* ¶ 9. When an individual is elected a Director of J & H, the requisite 500 shares of common stock are allocated for purchase by that individual at a relatively nominal cost. *Id.* ¶ 14.

Importantly, directors of J & H retain their prior duties upon becoming Director and remain "employees" of the corporation. *See* Ex. 13 to Affidavit of Sonya LeCount Dated Dec. 23, 1994 ("LeCount Aff.") at 11; *see also* Ex. 2 to LeCount Aff. at 5. However, Directors obtain additional duties in conjunction with their appointment, including possible service upon various committees and attendance at Board meetings. Ex. 13 to LeCount Aff. at 16, 43–44. In addition, their prestige and "personal stature and credibility" within the organization, as well as their "ability to get things done within and without one's particular area of responsibility," are "enormously enhanced." Mundy Aff. ¶ 11. Defendant contends that "[i]f status as a Director is accepted, 'employment' continues, but it becomes but an aspect of the fundamentally entrepreneurial relationship that the Directors have among themselves and to the firm as a whole." *Id.*

At issue in this case is J & H's mandatory retirement policy pertaining to its Directors. Adopted unanimously by the Board of Directors by resolution to the By–laws, this policy states:

RESOLVED, that the normal retirement date for Directors be the earlier of (a) the year in which the age 62 is attained or (b) the end of the year in which age 60 is obtained and 15 years of service on the board is completed. With respect to (b), in cases of corporate need determined by the Chairman and approved by the Executive Committee, a Director may continue on a year-to-year basis up to but not beyond the end of the year in which age 62 is attained.

Ex. B to Mundy Aff. Twenty-two Directors have retired since the adoption of this policy on November 16, 1983.[1] Mundy Aff. ¶ 3.

Although J & H's mandatory retirement policy applies only to Directors, it also affects their status as employees and officers of the Corporation. When a Director retires pursuant to this policy, he not only ceases to be a Director, but also loses his position as a stockholder, officer, and employee of the company. *See* Ex. 13 to LeCount Aff. at 75–76. Indeed, Directors joining the Board are asked to submit a letter of resignation "as a Director, officer and employee," which becomes effective "at the pleasure" of two-thirds of the Board. Mundy Aff. ¶ 11. In short, a new Director continues in J & H's active service as an officer and employee of the corporation or one of its subsidiaries, "but if status as a Director is accepted, the individual's role as an officer or employee becomes appurtenant to his Directorship and if the one status terminates, so does the other." *See* Ex. 2 to LeCount Aff. at 5 (letter from defendant's counsel to EEOC).

## DISCUSSION

### A. *Summary Judgment*

■ Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548,

---

1. Prior to adoption of this policy, the informal "understanding" among the Directors had been that they would retire at age 62, with provision for extension in certain circumstances to age 65. Mundy Aff. ¶ 20.

2552, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. *See Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). All ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *See Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

As discussed below, we find that there are no material facts in dispute in this case and that plaintiff is entitled to judgment as a matter of law.

B. *The ADEA*

■ The Age Discrimination in Employment Act ("ADEA" or "the Act") provides that it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to bring an action under the ADEA, a plaintiff must be an employee suing a former or current employer. *See Hyland v. New Haven Radiology Assocs.,* 794 F.2d 793, 796 (2d Cir.1986); *Caruso v. Peat, Marwick, Mitchell & Co.,* 664 F.Supp. 144, 146 (S.D.N.Y.1987). The Act defines "employer" in general terms as "a person engaged in an industry affecting commerce who has twenty or more employees...." 29 U.S.C. § 630(b). An "employee" is defined in the Act simply as "[a]n individual employed by an employer." 29 U.S.C. § 630(f).

■ We find that J & H's retirement policy, which requires those of its employees sitting on J & H's Board of Directors to retire when they reach the age of 60 or 62, violates the clear language of the ADEA. We might conclude differently if J & H's employee-Directors were merely forced under the policy to sell their stock and to resign from their position as Director. *See Equal Employment Opportunity Comm'n v. First Catholic Slovak Ladies Assoc.,* 694 F.2d 1068, 1069 (6th Cir.1982) (noting that "directorships have traditionally been viewed as employer rather than employee positions"), *cert. denied,* 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 90 (1983); *see also Zimmerman v. North American Signal Co.,* 704 F.2d 347, 352 (7th Cir.1983) ("We do not believe Congress intended the term 'employee' [under the ADEA] to include persons who are no more than directors of a corporation or unpaid, inactive officers."). *But see Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 n. 4 (3d Cir.1995) (suggesting that J & H's mandatory retirement policy, even with respect to Director status alone, might violate the ADEA). However, J & H's policy not only forces a Director to give up a directorship at age 60 or 62, but it also terminates one's status as officer and employee of the corporation. Because J & H's policy therefore discriminates by age against J & H's employee-Directors in their role as employees, we find that this policy is prohibited by the ADEA. *Cf. First Catholic,* 694 F.2d at 1069 (mandatory retirement plan violated ADEA not because it forced directors to retire, but because certain employees were required to be members of the Board of Directors; retirement plan thus indirectly placed age limitation on these employees).

■ J & H contends that its retirement policy is based upon "reasonable factors other than age" ("RFOA") and is therefore permissible under the ADEA. 29 U.S.C. § 623(f)(1). We disagree. In order to qualify for the RFOA defense under the Act, an employment practice or policy must be "age neutral." *Iervolino v. Delta Air Lines, Inc.,* 796 F.2d 1408, 1415 (11th Cir.1986), *cert. denied,* 479 U.S. 1090, 107 S.Ct. 1300, 94 L.Ed.2d 155 (1987). As the EEOC's regulations state, "[w]hen an employment practice uses age as a limiting criterion, the defense that the practice is justified by a reasonable factor other than age is unavailable." 29 C.F.R. § 1625.7(c). J & H's retirement policy expressly utilizes age as its sole limiting criterion: but for reaching age 60 or 62, an employee-Director could remain an employee

of J & H.[2]  Therefore, the defense that J & H's policy is based upon reasonable factors other than age is not available.

J & H notes that its non-Director employees are not forced to give up their employee status at age 60 or 62 and argues that its employee-Directors are only required to do so because once they have resigned their Directorships it would be awkward and unrealistic for them to move from their position of power and prestige back to their former status as mere employees.[3]  Transcript of Oral Proceedings Dated March 23, 1995 ("Tr.") at 18–19, 23–24.  Therefore, urges J & H, we should view the termination of employee status under the retirement policy as due not to age but rather to the peculiar "dual status" of J & H's employee-Directors.

We reject this "dual status" argument in light of the recent decision of the Second Circuit Court of Appeals in *Johnson v. New York*.  In that case, a civilian air base security guard for the New York State Division of Military and Naval Affairs was terminated when he retired from the New York Air National Guard ("ANG") at age 60 as required by federal military regulations.  *See Johnson v. New York*, 49 F.3d 75, 76 (2d Cir.1995).  New York State required its civilian security guards to be members of the National Guard and offered several seemingly age-neutral justifications for this "dual status" requirement.[4]  *Id.* at 76, 77.  Never-

theless, the Court found that New York's decision to require dual status was "age-based" and consequently unlawful under the ADEA.[5]  *Id.* at 80.  Although the ANG was not within the reach of the ADEA and thus did not violate the law by forcing plaintiff to retire at age 60, the State could not adopt the ANG's facially discriminatory policy.  *Id.* at 79.  *See also Arizona Governing Comm. v. Norris*, 463 U.S. 1073, 1074, 103 S.Ct. 3492, 3494, 77 L.Ed.2d 1236 (1983) (employee retirement plan discriminated on the basis of sex in violation of Title VII where employees had the option of receiving benefits from one of several companies selected by the employer, all of which paid lower monthly benefits to women).

In our view, the *Johnson* court's holding precludes any argument that J & H's employee-Directors are forced to give up their employee status because of factors other than age.  Moreover, J & H's mandatory retirement policy is arguably less defensible than that in *Johnson* in that it is not a third party's facially discriminatory policy that negatively impacts on J & H's employees, but a policy implemented and imposed by J & H itself.  In addition, we find defendant's justification for its "dual status" requirement to be considerably less persuasive than those offered by the defendant in *Johnson*.  While J & H may be correct that it would be

---

**2.**  Indeed, J & H's General Counsel has admitted that J & H deliberately chose not to place a time limit, as opposed to an age limit, on the term of office of Director because:

> the feeling was if you put an arbitrary limit on the term of office of the director, that could require the departure of someone who was still making major contributions to the company.  It wouldn't make any sense for someone who became a director at age 40 to be told he or she would have to go to age 55 if he or she is productive and energetic and creative and all of the other things that are important to the well-being of the enterprise.

Ex. 13 (Examination Before Trial of Gardner M. Mundy) to LeCount Aff. at 80.

**3.**  At oral argument, J & H's counsel described his client's concerns as follows:

> These people as employees, as directors, they have a tremendous amount of power, authority, et cetera.  To make them just employees and no longer directors and stockholders and expect them to do anything like what they are

doing before, is unrealistic.  To the degree that they are replaced on the Board and as stockholders by others, their presence as former directors in the employment ranks would be just too difficult to manage.

Tr. at 23–24 (statement of John F. Cannon).

**4.**  New York justified its dual status requirement for the following reasons:

> (1) the policy assures that security guards are fully trained in accordance with current standards of federal military practice;  (2) it assures that guards are familiar with military protocol and the equipment they are assigned to protect;  and (3) it assures that guards are available to accompany their unit in the event the unit is activated.

*Johnson*, 49 F.3d at 77.

**5.**  Defendants in *Johnson* "explicitly disavowed" reliance on any possible bona fide occupational qualification ("BFOQ") defense.  *See* 49 F.3d at 80.  J & H asserts no such defense in this case.  *See* Tr. at 21–22.

uncomfortable and perhaps illogical for employee-Directors to become mere employees upon retiring from the Board, we note that J & H could easily solve this problem without violating the ADEA by structuring its retirement plan for Directors so that it took effect at age 65 rather than age 60 or 62. Under the Act, as J & H is well aware, high-level employees can be forced to retire at age 65.[6] 29 U.S.C. § 631(c).

■ Defendant argues alternatively that its retirement plan is not unlawful under the ADEA because J & H's Directors are not really "employees" within the meaning of the Act. These Directors not only control and manage the business, but they also are "co-owners" of the corporation, jointly holding all but a tiny fraction of its stock. As such, urges defendant, J & H should be viewed by the Court as the equivalent of a limited-liability partnership, and its owner-officer-Directors should be viewed not as its employees, but rather as its partners. The protections of the ADEA generally do not apply to those classified as partners. *See Hyland v. New Haven Radiology Assocs.*, 794 F.2d 793, 797 (2d Cir.1986). *But see Caruso v. Peat, Marwick, Mitchell & Co.*, 664 F.Supp. 144, 148–50 (S.D.N.Y.1987) (rejecting a per se rule that partners are not employees and instead setting forth a multi-factor test).

We believe that this argument by defendant has some merit. Employees who are also co-owners and directors of their corporation arguably are in a better position to take care of themselves than the average employee and consequently may not require the protections of the ADEA. Nevertheless, J & H's argument that its employee-Directors should be treated like partners rather than corporate employees for purposes of the Act

is barred by the Second Circuit's opinion in *Hyland v. New Haven Radiology Associates.*[7] In *Hyland,* plaintiff was forced to resign from a professional corporation in which he and four other radiologists served as corporate officers and directors, were the only stockholders, and divided profits and losses evenly among themselves. *Hyland,* 794 F.2d at 794. The district court dismissed plaintiff's ADEA suit after applying an "economic realities" test and concluding that the defendant corporation amounted "to a partnership in all but name." *Id.* at 794. The Second Circuit reversed, holding that defendant's action was subject to the ADEA:

> The fact that certain modern partnerships and corporations are practically indistinguishable in structure and operation ... is no reason for ignoring a form of business organization freely chosen and established. Concededly, the physician members of [the defendant corporation] found that incorporation provided them with important tax advantages and employee benefits not available in any other type of business organization. Having made the election to incorporate, they should not now be heard to say that their corporation is 'essentially a medical partnership among co-equal radiologists.'

*Id.* at 798.

In reaching its decision, the *Hyland* court stated that the adoption of the corporate form, despite the defendant organization's similarities to a partnership, ended the inquiry as to its liability under the ADEA: "[W]here the individual involved is a corporate employee ... we hold that every such employee is 'covered' for purposes of the ADEA and that any inquiry respecting [his] partnership status would be irrelevant." *Id.*

---

**6.** J & H asserts that if "Directors were not required to resign until age 65, that would tie up Board seats for an average of 20 years," which is "too long a time" as far as J & H's compensation scheme and J & H's ability to attract the best Directors is concerned. In light of the fact that Congress has mandated age 65 and not age 60 or 62 as the minimum mandatory retirement age for high-level employees, we reject J & H's argument that such considerations relating to compensation should be left to J & H's own "good-faith business judgment." Ex. 24 to LeCount Aff. (letter from J & H's counsel to EEOC).

**7.** We reject defendant's contention that we are no longer bound by *Hyland* in light of *Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) and *Frankel v. Bally, Inc.,* 987 F.2d 86 (2d Cir.1993), both of which looked to common-law agency principles in determining whether an individual was an employee. We agree with plaintiff that these opinions must be viewed in their context, which involved the difference between an "employee" and an "independent contractor" for purposes of the federal employment laws.

at 798. *Hyland* thus set forth an absolute rule that, in our view, prevents us from ignoring J & H's freely-chosen status and treating J & H for purposes of this action as a partnership rather than a corporation.

In short, J & H essentially requests that this Court create an exception to the ADEA for corporate employees who are also Directors and share-holders of their corporation. While we agree, as stated above, that such employees are arguably better able to protect themselves vis-a-vis their firm than the typical employee, we do not believe that it is our role to devise such an exception where Congress has declined to do so, especially in light of the *Hyland* decision. Congress has seen fit to make age 65 the minimum retirement age for high-level employees such as those here. *See* 29 U.S.C. § 631(c). J & H is therefore free to restructure its retirement policy so that it kicks in at age 65. Alternatively, J & H can sever the link between the employee-status and Director-status of its employee-Directors, allowing these individuals to remain as employees of J & H even after losing their Directorship. Either way, we are unconvinced that compliance with the law will be as burdensome for J & H as it contends.

### C. *The EEOC's Enforcement Power*

■ Defendant urges that the EEOC has no power to bring this action because "no one has been aggrieved" by J & H's mandatory retirement policy. Because all of J & H's present and retired Directors are apparently satisfied with its retirement policy, J & H contends, this case should be dismissed due to the "absence of any injured party." We reject this line of argument.

■ Pursuant to 29 U.S.C. § 626(b), the ADEA incorporates by reference the enforcement provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216, 217. Section 216(c) authorizes the EEOC to bring an action to eradicate discrimination on behalf of aggrieved employees and to seek relief including back-wages and liquidated damages. Additionally, under Section 217, the EEOC has the separate and independent power to investigate possible violations of the ADEA and institute injunctive proceedings. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir.1988). Where there is a violation of the ADEA, the EEOC may proceed under these provisions without the consent of, and indeed even against the wishes of, those individuals aggrieved. *See Equal Employment Opportunity Comm'n v. Chrysler Corp.*, 546 F.Supp. 54, 73–75 (E.D.Mich. 1982), *aff'd*, 733 F.2d 1183 (6th Cir.1987); *Equal Employment Opportunity Comm'n v. Blue Star Foods, Inc.*, Civil Action No. 78–5–W, 1980 WL 118, at *4 (S.D.Iowa Mar. 7, 1980).

■ The EEOC brings this action in response to a mandatory retirement policy that violates the clear language of the ADEA. Even if defendants are correct that "no one who is in a position to be affected wants the EEOC or this Court to do anything [that would alter the policy]," Defendant's Memorandum in Opposition at 13, that is no obstacle to the EEOC's action. The duty of employers under 29 U.S.C. §§ 623(a) and 631(c) not to terminate high-level employees before the age of 65 is not one that can be bargained away or waived. *Cf. Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 513 (9th Cir.1978) (obligation to pay overtime wages for work in excess of forty hours a week was a "statutory duty" that "could not be modified or waived").

What J & H really seems to be arguing when it asserts that there are no "injured parties" in this action is that J & H's employee-Directors are more like co-owners or partners than employees and do not require the protections of the ADEA. However, this Court has already resolved that issue to the contrary. *See supra* pp. 687–688. We therefore reject J & H's argument that the EEOC lacks the statutory authority to bring this suit.[8]

---

8. J & H additionally contends both that this action does not present a justiciable case or controversy and that the matter presented here is not ripe for adjudication. Each of these contentions, we believe, is essentially a reformulation of

J & H's argument that no "injury" exists in this action because the only individuals affected by J & H's retirement policy are Director-shareholders who are content with the status quo. As we have found that there was a violation of the

## D. *Conciliation*

■ J & H argues finally that we should deny the EEOC's motion for summary judgment because the EEOC failed to attempt conciliation of this matter before bringing its suit in federal court. We disagree.

■ Section 7(b) of the ADEA states that "[b]efore instituting any action under this section, the Equal Employment Opportunity Commission shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b). By enacting this section, Congress expressed its preference that the EEOC undertake "strong, affirmative attempts . . . to effect compliance before resorting to legal action." *Equal Employment Opportunity Comm'n v. American Express Publishing Corp.*, 681 F.Supp. 216, 221 (S.D.N.Y.1988) (quoting *Brennan v. Ace Hardware Corp.* 495 F.2d 368, 374 (8th Cir. 1974)). The EEOC complies with this requirement if it "inform[s] the defendant of the nature and extent of the violations, explain[s] the relief sought, and [gives] the defendant an opportunity to respond." *Equal Employment Opportunity Comm'n v. New Cherokee Corp.*, 829 F.Supp. 73, 81 (S.D.N.Y.1993) (quoting *Marshall v. American Motors Corp.*, 475 F.Supp. 875, 878 (E.D.Mich.1979)); *see also Equal Employment Opportunity Comm'n v. KDM School Bus Co.*, 612 F.Supp. 369, 374 n. 17 (S.D.N.Y. 1985).

Considering all of the evidence, we find that the EEOC adequately satisfied its duty to attempt conciliation before filing this action. On May 21, 1992, the EEOC began its investigation of J & H's mandatory retirement policy. Affidavit of Harold Wilkes Dated Mar. 10, 1995 ("Wilkes Aff.") at ¶ 4. On June 19, 1992, investigator Yvonne McCord held a pre-determination conference via telephone with J & H's defense counsel and informed him that the EEOC had determined that J & H's policy violated the law. Affidavit of Yvonne McCord Dated Mar. 10, 1995 ("McCord Aff.") at ¶ 4. This telephone call was followed by a meeting on July 2, 1992 at which J & H's representatives informed the EEOC's representatives that they did not believe J & H's policy was unlawful. Wilkes Aff. ¶ 6; Affidavit of John F. Cannon Dated Feb. 3, 1995 ("Cannon Aff.") ¶ 6. On July 8, 1992 the EEOC issued its reasonable-cause determination and formally invited the defendant to conciliate. Ex. 6 to LeCount Aff. In a letter dated July 23, 1992, defendant once again reiterated its position that its policy did not violate the law and was based on reasonable factors other than age. Ex. 24 to LeCount Aff. By telephone on September 9 and by letters dated September 15 and December 8, 1992, the EEOC made several more unsuccessful attempts at conciliation. McCord Aff. ¶¶ 5–8; Ex. 7 to LeCount Aff; Ex. G to Cannon Aff. Finally, on August 5, 1993, the EEOC commenced this action in federal court. These actions by the EEOC, we believe, were more than sufficient to "inform[ ] the defendant of the nature and extent of the violations, explain[ ] the relief sought, and g[i]ve the defendant an opportunity to respond." *American Motors Corp.*, 475 F.Supp. at 878.

In determining that the EEOC has complied with its statutory duty to conciliate, we also find it important that J & H has maintained at all times an intransigent position regarding its mandatory retirement policy. J & H has insisted even up to and beyond the date of oral argument of this motion that any consensual resolution between it and the EEOC allow J & H to continue to require its employee-Directors to retire before age 65. *See* Tr. at 35; Letter to Court from John F. Cannon Dated Mar. 31, 1995. The courts have held that "the Secretary is not required to continue [conciliation] efforts after the defendant has stated that it believes it has not been guilty of wrongdoing but may proceed to litigation to determine that issue." *American Motors Corp.*, 475 F.Supp. at 879. *See New Cherokee*, 829 F.Supp. at 81; *American Express Publishing*, 681 F.Supp. at 221 n. 11. J & H has suggested that the EEOC has not been sensitive enough to J & H's desire "to run its affairs in accordance with the busi-

ADEA here and have for that reason rejected J & H's argument that the EEOC lacks the authority

to bring this action, we reject each of these related contentions as well.

ness and financial imperatives that have shaped it the way it was for 100 years." Tr. at 35. *See also* Ex. F to Cannon Aff. (letter from defense counsel to EEOC). In our view, it is J & H that has not been sensitive enough to the legitimate concerns of the EEOC that its statutory mandate be carried out.

## CONCLUSION

For the reasons set forth above, plaintiff EEOC's motion for summary judgment is granted.

SUBMIT ORDER.