UNITED STATES EQUAL EMPLOY-
MENT OPPORTUNITY COM-
MISSION, Plaintiff,

v.

JOHNSON & HIGGINS, Defendant.

No. 93 CIV. 5481 (LBS).

United States District Court,
S.D. New York.

May 11, 1998.

United States Equal Employment Opportunity Commission, Sonya A. LeCount–McClanahan, Andrée M. Peart, New York, NY, for Plaintiff.

Cravath, Swaine & Moore, Elizabeth Grayer, New York, NY, for Defendant.

## *OPINION*

SAND, District Judge.

The Court has before it Defendant Johnson & Higgins' ("J & H") Motion for Partial Summary Judgment against the Equal Employment Opportunity Commission ("EEOC") pursuant to Fed.R.Civ.P. 56(b) seeking a dismissal of Plaintiff's claims for monetary and injunctive relief on the basis of waivers of rights signed by the retired directors of J & H. For the following reasons, Defendant's Motion is Denied.

## BACKGROUND

On December 23, 1994, the EEOC had filed a Motion for Partial Summary Judgment alleging that Defendant's mandatory, pre–65 retirement policy for its employee-directors violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* On June 12, 1995, this Court found for Plaintiff on that Motion and entered a judgment against Defendant. *Equal Employment Opportunity Commission v. Johnson & Higgins, Inc.,* 887 F.Supp. 682 (S.D.N.Y.1995). On July 6, 1995, this Court also entered an Order permanently enjoining Defendant from enforcing its unlawful retirement policy and directing the parties to enter into discovery to determine money damages.

Prior to the affirmance of that decision by the Court of Appeals for the Second Circuit on August 8, 1996, *EEOC v. Johnson & Higgins, Inc.,* 91 F.3d 1529 (2d Cir.1996), J & H obtained signed instruments of Waiver, Release and Assignment ("waivers") from the thirteen former employee-directors [1] retired since 1991 whose rights were held to have been violated. (Def.'s Notice of Mot.Ex. A) The waivers offered each of the retired employee-directors one thousand dollars [$1000] "and other good and valuable considerations" in exchange for, *inter alia,* a waiver of any rights or claims under the ADEA. On the strength of those waivers, Johnson & Higgins brought the instant Motion for summary judgment as to the issue of damages. Since the filing of this Motion on the damages issue, however, the ex-employee-directors have filed affidavits repudiating their waivers. (LeCount–McClanahan Aff. of April 9, 1998) Although there is a variation in the language of these repudiations, their essence is that the waivers were not knowingly and voluntarily given because, *inter alia,* the signers acted on the advice of counsel for Johnson & Higgins, who had a conflict of interest; they were the product of economic duress and were signed in an atmosphere of acute peer pressure and undue influence from the Johnson & Higgins "clubby" cul-

ture, where the Board of Directors operated in unison and dissent was not tolerated. (Tr. of 4/13/98 at 21 & 50)

EEOC opposes the instant Motion on several grounds. The EEOC asserts that these waivers of rights to backpay in excess of $3 million dollars for each employee-director, executed in consideration of $1,000 are, as a matter of law, not "knowing and voluntary" because they do not satisfy the minimum requirements of 29 U.S.C. § 626(f)(1)(D), which provide that a waiver is knowing and voluntary only if given in exchange for "consideration in addition to anything of value to which the individual already is entitled." EEOC argues that, as a matter of law and logic, one thousand dollars is not and cannot constitute a reasonable level of consideration to recompense individuals for multi-million dollar losses of salary owed.

Further, EEOC contends that, by virtue of the presence of attorney conflict of interest, economic duress and undue influence, the reasons set forth in the repudiation affidavits, the waivers were not "knowing and voluntary" within the meaning of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f)(1) *et seq.,* which imposes specific requirements for releases covering ADEA claims. (LeCount–McClanahan Aff.)

Moreover EEOC asserts the waivers are ineffective because, once an EEOC complaint is filed, private parties lose any right to control the litigation, which becomes the exclusive prerogative of the EEOC and not of the putative beneficiaries. EEOC contends that, at a minimum, after this Court's 1995 finding of liability, the EEOC was a necessary party in any settlement negotiations and that its total exclusion from the waiver-signing process vitiates the waivers.

## DISCUSSION

Summary judgment is appropriate when, viewing the evidence in a light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

---

1. Messrs. Bergsten, Cameron, Clemens, Hatcher, Hecken, Owens, Rice and Shattuck had already retired at the time this lawsuit was commenced.

Another five, Messrs. Aiena, Benjamin, McGhee, Meyer and Seward, retired subsequently.

law. *Brown v. City of Oneonta,* 106 F.3d 1125, 1130 (2d Cir.1997); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This device is a "drastic procedural weapon because its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." *Garza v. Marine Trans. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988) (citation omitted). The role of the court is not to resolve disputed facts, but rather to determine whether the record as a whole supports any issues that require a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Used properly, Rule 56 is a sharp procedural weapon to ward off wasteful trials and "to isolate and dispose of factually unsupported claims," *Celotex* 477 U.S. at 323–24, 106 S.Ct. 2548 (1986).

The case before us is unusual given the changing stance toward this action taken by the retirees whose rights the EEOC seeks to champion.[2] Their apparent shift of attitude is at the heart of this Motion, which goes to the meaning of knowing and voluntary under the OWBPA. The main issue, which is a matter of first impression before this Court, is whether summary judgment can be found for the Defendant on the basis of waivers of millions of dollars in potential damages, signed in exchange for $1,000 *after* a finding of liability, when these waivers were subsequently repudiated. The Defendant has the burden of showing the validity and applicability of the waivers. We therefore turn our attention to requirements for valid waivers under the OWPBA, 29 U.S.C. 626(f) *et seq.*

To inform our inquiry into the validity of the waivers under the statute itself, we are guided by the approach in *Cirillo v. Arco*

*Chem. Co.,* 862 F.2d 448 (3d Cir.1988) (under the "totality of the circumstances approach," waiver found to be valid). *Cirillo,* which preceded the enactment of the OWBPA, moved away from an analysis of waivers based on contract principles alone to adopt a "totality of the circumstances" approach, which called for careful evaluation of the waiver itself and an examination of the complete circumstances and context in which it was executed. *Id.* 862 F.2d at 450. It is this "totality of the circumstances" test which was embraced by Congress and has been invoked by courts in analyzing waivers of ADEA claims. Senate Report at 1537; *see Livingston v. Adirondack Beverage Co.,* 141 F.3d 434 (2d Cir.1998) (applying "totality of the circumstances test" to determine whether release of a Title VII claim is knowing and voluntary).

The "totality of the circumstances" inquiry takes into consideration: 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it; 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law. *Bormann v. AT & T Communications, Inc.,* 875 F.2d 399, 403 (2d Cir.1989). Although this test is helpful to guide and focus our analysis, since the enactment of the OWBPA, any evaluation of private waivers of rights under the ADEA must start first with the relevant statute.

## THE STATUTE AND ITS INTERPRETATION

On October 16, 1990 Congress enacted the OWBPA as an amendment to the ADEA. Its purpose was to "make[ ] clear that discrimination on the basis of age in virtually all forms of employee benefits is unlawful" and

---

**2.** The retirees signed the waivers of rights in September 1995 and repudiated those waivers in affidavits signed in March 1998. In 1997 ten of the retired directors filed a separate suit against Marsh & McLennan Companies, Inc. for injuries suffered in connection with the sale of J & H to Marsh & McLennan in March 1997. (First Amended Compl., *Aiena, et al. v. Olsen, et al.,* 97 Civ. 8713 (LAK))

"to ensure[ ] that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA." Senate Labor and Human Resources Committee Report on the Older Workers Benefit Protection Act, S.Rep. 101–263, 101st Cong., 2d Sess. at 2 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1510 ("Senate Report"). Unlike the older Section 16(c) of the Fair Labor Standards Act ("FLSA"), which is incorporated into the ADEA at Section 7(b), and which contains no provision for private waivers, the OWBPA provides for a private scheme to waive rights under the ADEA without the intervention of the EEOC. The OWBPA imposes specific requirements for releases covering ADEA claims. It demands that "an individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary ... [A] waiver may not be considered knowing and voluntary unless at a minimum" it satisfies certain conditions which we shall discuss below. 29 U.S.C. § 626(f)(1); *see Oubre v. Entergy Operations, Inc.*, —— U.S. ——, ——, 118 S.Ct. 838, 841, 139 L.Ed.2d 849 (1998) (considers the standards for releases raised by statutory requirements). Of relevance here is that

Congress clearly intended to permit waivers under the ADEA but also wanted to regulate them carefully. The statute, by creating its own set of criteria for valid waivers which must be met, took these waivers out of the regime of common law contract and put them squarely under the purview of the statutory provisions of the OWBPA. *Id.* ("The OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law."); *see also Reid v. IBM Corp.*, 1997 WL 357969 (S.D.N.Y.) (waiver must meet statutory minimums to be valid), *Long v. Sears Roebuck & Co.*, 105 F.3d 1529 (3d Cir.1997) (where release fails to comply with OWBPA, common-law doctrines of ratification and tender back should not be applied to bar suit by employee for ADEA violations). Principles of common law contract must not be used to circumvent the statutory scheme which Congress intended to govern releases from the protections of the ADEA.

Therefore in assessing the relevance and validity of the waivers at issue in the instant Motion, we must consider whether the waiver has, in fact, satisfied the requirements of the statute.[3]

---

**3.** The "Waiver, Release and Assignment" signed by each of the retired employee-directors state, in relevant part:

... WHEREAS, in the action entitled *Equal Employment Opportunity Commission v. Johnson & Higgins*, 887 F.Supp. 682 (S.D.N.Y.1995) ("the Federal Action"), the United States District Court for the Southern District of New York (I) in an Opinion dated June 12, 1995, has found that such retirement policy for Directors violates the Age Discrimination in Employment Act because it requires Directors to retire before age 65 and Directors are employees, and (ii) by Order dated July 6, 1995, has directed Johnson & Higgins to rescind such retirement policy for Directors; and

WHEREAS, the court in such action has also directed that further proceedings be had to determine, among other things, whether or not the Equal Employment Opportunity Commission ("EEOC") may obtain money damages and injunctive relief against Johnson & Higgins on behalf of Directors who like me have retired in or after December 1990 pursuant to such retirement policy for Directors;

NOW, THEREFORE, having read the aforementioned Opinion dated June 12, 1995, and Order dated July 6, 1995, and in consideration of the payment to me on the effective date hereof of the sum of one thousand dollars, and other good

and valuable considerations, I hereby, on behalf of myself and my heirs, administrators, executors, successors and assigns, do the following:

1. Effective upon satisfaction of the condition statute in paragraph 5, below, waive, release, and assign to Johnson & Higgins whatever rights or claims for monetary relief (including back wages and other damages) or injunctive relief (including an order that I be rehired or reinstated) I may have or may yet have under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA") (or under any other law that prohibits discrimination on the basis of age), based upon the unlawfulness of the termination of my status as an employee, statutory director, or stockholder of Johnson & Higgins, pursuant to the retirement policy for Directors of Johnson & Higgins which was adopted by the Board of Directors on November 16, 1983.

2. State that the waiver, release and assignment set forth in paragraph 1, above, does not apply to or in any way affect any rights or claims I may have based upon the retirement-income plans of Johnson & Higgins, or upon the Ten–Year Contract respecting the resale to Johnson & Higgins of the shares of Johnson & Higgins stock I owned at the time of my retirement, or upon any laws or facts other than those specified in said paragraph 1.

## ADEQUATE CONSIDERATION

J & H argues that the waivers signed by the employee-directors satisfied the necessary preconditions in that they: were part of a written agreement; made specific reference to rights and claims under the ADEA; did not constitute a prospective waiver of future rights; were made in exchange for valuable consideration; advised in writing that the signator consult with an attorney; and provided for a period of reflection and revocation. (Def.'s Mem. of Law at 6) J & H claims that these waivers bar recovery by either the EEOC or the individuals on their own behalf. For this proposition J & H cites *EEOC v. Cosmair, Inc.*, 821 F.2d 1085 (5th Cir.1987) (waivers of damages under ADEA preclude monetary relief in suits brought on behalf of waiving persons). (Def.'s Reply Mem. at 22)

The OWBPA calls for "consideration in addition to anything of value to which the individual already is entitled." § 626(f)(1)(D). EEOC contends that the consideration given for the waivers, namely $1000, does not satisfy this statutory requirement on the totality of the facts. EEOC reads this language to mean that valid and adequate consideration for such a waiver can be no less than the damages to which the employees would be entitled if they prevailed on the merits. Because the waivers were signed at the point after liability had been found by this Court, the EEOC says, the value "to which the individual already is entitled," would be the amount of award for backpay and damages in this lawsuit. By EEOC's calculation, the retirees would be entitled to somewhere between 3–10 million dollars each and therefore, logically, would not and could not knowingly and voluntarily trade this for $1,000 dollars consideration.

J & H strenuously objects to this interpretation of the statute. Such a reading, J & H argues, would eviscerate the validity of any waiver, which necessitates some sort of bargain or compromise in every case, and therefore would undermine congressional intent. Instead, Defendant claims that at the time the waivers were executed, the retired employee-directors were not entitled to an ascertainable amount but simply granted the right to prove their damages in the case. J & H reads this section of the statute to require only that there be valuable consideration given of *any* value in addition to that which the individual is already entitled and not an amount "somehow equivalent to or greater than the monetary value of the rights being waived." (Def.'s Reply Mem. at 7) To hold otherwise, Defendant contends, would interfere with private parties' ability to negotiate waivers. Furthermore, Defendant states, to assess the value of the consideration on the basis of the approximate value of all the salary foregone would not comport with the express function of a waiver, where rights are traded "at a discount" for an amount less than the full amount recoverable in successful litigation.

3. Acknowledge that I have been given at least 21 days within which to consider this document and its consequences, and that I have been advised in writing by Johnson & Higgins to consult with an attorney before signing it.

4. Confirm my understanding that, for a period of 7 days following the execution of this document, I may revoke it, and that it shall not become effective or enforceable against me in accordance with its terms until after such revocation period has expired.

5. Condition the effectiveness of the waiver, release and assignment of rights and claims set forth in paragraph 1, above, upon a final, non-appealable judgment in the Federal Action that precludes the assertion on behalf of the Treasury of the United States (or any other entity or person) of any right or claim to any monetary relief that might have been recovered on my behalf in said Action.

6. In the event that the waiver, release and assignment of rights and claims set forth in paragraph 1, above, does not become effective because the condition specified in paragraph 5, above, has not been satisfied, (I) assign to such charitable, educational or other organizations, eligible under the Internal Revenue Code to receive tax-deductible contributions, as the Board of Directors of Johnson & Higgins may designate, and in such proportions as it may determine, whatever monetary relief the EEOC may obtain in the Federal Action on my behalf, after the payment to me of any amount that may be necessary to offset any adverse tax consequences to me of the grant of such monetary relief, and (ii) promise to execute such further documentation as may be necessary to implement such assignment.

This Court is mindful of the fact that, in assessing the adequacy of consideration, we must, as the Supreme Court recently did in *Oubre*, look beyond basic principles of contract law to the strictures of the statute before us. *Oubre v. Entergy Operations, Inc.,* — U.S. ——, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). In *Oubre* the Court held that a release which did not comply with the OWBPA could not bar Plaintiff's claim under the ADEA. Defendant's reliance on the common law principles of contract ratification and equitable estoppel in that case was unavailing because it did not overcome the failure of that defendant to meet the requirements of the statute. Similarly, the district court in *Reid v. IBM Corp.,* 1997 WL 357969 (S.D.N.Y.), while upholding the waiver and granting IBM's motion for summary judgment, also held that the minimum statutory requirements must be met before looking to contract law. A Plaintiff must demonstrate an issue of contested fact with regard to the requirements of the OWBPA to produce additional evidence that a waiver was not "knowing and voluntary" under the statute to challenge the waiver. Traditional contract principles come into play only after an initial inquiry as to compliance with the statutory provisions. *Reid* at *14 ("OWBPA does not rule out ratification where the release satisfied the OWBPA's minimum requirements.").

■ Looking at the totality of the circumstances here, we find that there is, at a minimum, a material issue of controversy with regard to the adequacy of consideration paid by Defendant under the OWBPA and its effect on the validity of the waivers at issue in this Motion. At the point when the retired employee-directors signed the waivers, this Court had already found liability on the part of J & H and ruled its retirement policy illegal under the ADEA. It would therefore be impossible to construe the "benefits" to which the employee was "already entitled" at the time of signature as somehow limited only to the amount provided for in the pension plan alone; and anything above it to be requisite consideration. This Court struck down the retirement policy and the generous pension benefits under it for failure to comply with federal law. Defendant cannot now argue that the waivers were valid because the retirees got the benefits to which they were entitled. As a matter of law, those benefits were paid pursuant to an invalid and illegal plan under which the employee-directors should not have been forced to retire. Hence we cannot accept Defendant's argument that the $1,000, on its face, constituted sufficient consideration. Where a waiver fails to comply with a minimum provision of the OWBPA, it is void for purposes of barring suit under the ADEA. Common law doctrines of consideration, though they may inform our reading, are not dispositive where there has not been compliance with the statute.

## KNOWING AND VOLUNTARY

■ The EEOC challenges the waivers, not only on the ground of inadequate consideration, but for the reason that, they allegedly were the product of undue influence, economic duress and coercion. We find that this argument also raises a sufficient question of material fact such that, even were we to find that the $1,000 sufficiently valuable consideration to uphold the validity of the waivers, the waivers could still fall on a challenge to their voluntariness. A waiver is not knowing and voluntary unless *at a minimum*, the waiver meets all the statutory requirements enumerated in the context of the circumstances. We find that there exists on the record before us a sufficiently disputed and material issue of fact as to whether these waivers were signed knowingly and voluntarily or under coercion to preclude summary judgment at this time. We reject Defendant's argument that well-educated and otherwise financially successful individuals, such as these directors, cannot, as a matter of law, be objects of coercion. (Def.'s Reply Mem. at 9)

The circumstances of the case are somewhat unusual in that they involve a unique corporate culture of all-for-one-and-one-for-all. "We were a family at J & H and all communications about this lawsuit were communicate [sic] in such a way that you believed that the family was being attacked and we must stick together." (Seward Aff. at ¶ 12) Another one of the retired employee-

directors describes the culture as follows: "if the executive committee brought a policy to the Board for a vote, it was understood that you were to vote for the policy. In my entire career on the Board, I do not remember once that the Board did not vote unanimously to adopt a policy recommended by the executive committee." (Shattuck Aff. at ¶ 7) Succinctly put, Plaintiff contends that there could be no such thing as a voluntary and autonomous individual choice in matters concerning the J & H board of directors. Plaintiff argues that the retirees were further constrained in their freedom by J & H's proffer, at its expense, of legal counsel whose advice was tainted by a conflict of interest. Plaintiff also alleges that the communications between the retired directors and J & H, which excluded EEOC, were misleading and demonstrative of Defendant's bad faith. These communications suggested that J & H was acting in the directors' best interests.

By contrast, Defendant argues that there is no issue of material fact outstanding as to the validity of the waivers on the grounds of coercion by financial threat, misleading representations by J & H or any conflict of interest in the legal representation of the retirees. J & H points out that the retirees all were sophisticated businessmen. (Mundy Aff. at 3) Under the pension plan provided to them, substantial regular payments remained unaffected by whether and in what amount additional dividends would be issued. What has happened here, Defendant claims, is not coercion but a change of heart on the part of the retired directors, "because they are now angry with J & H for other reasons. That is simply not a sufficient reason to be allowed to walk away from a binding waiver, release and assignment executed over two years ago." (Reply Mem. at 4)

In their repudiating affidavits, the retired employee-directors explain that, under the retirement agreement foisted upon them by the company, the active board members continued to have control over the amount of money they would receive during retirement. For example, one employee-director explains that he was required to exchange the stock he had accumulated in the company for a "ten-year certificate." That certificate "can

be nullified if the Director does anything that the Board considers detrimental to the company or competes with the company." (Aiena Aff. at ¶ 10) The dividends on all stock held by active directors and the ten year certificates held by retired directors was and is determined by the active board members. (Rice Aff. at ¶ 14)

Undue influence requires "unfair persuasion by a person who, because of his relation to the victim, is justifiably assumed by the victim at the time to be one who will not act in a manner that is inconsistent with the victim's welfare." *Reid* at *6 (quoting *Joseph v. Chase Manhattan Bank, N.A.*, 751 F.Supp. 31, 34 (E.D.N.Y.1990) (citing Restatement (Second) of Contracts § 177 (1981))). On the facts Plaintiff has presented there exists a doubt, given the very unique and special culture of J & H, whether the retirees, in fact, justifiably relied on the company and its counsel to act in their best interests and whether they were manipulated. The tone and content of correspondence between the parties suggests that they may well have been misled into believing that no conflict of interest existed between their interests and those of J & H.

## VALIDITY OF THE WAIVERS IN THE ABSENCE OF EEOC PARTICIPATION

█ ] J & H also argues that the waivers constituted part and parcel of an effort to settle privately its dispute with the retired employee-directors. J & H asks this Court to rule as part of this Motion on the rights of private parties to negotiate settlement independently of the EEOC. EEOC contends that, as a threshold matter, the waivers are ineffective because J & H had no right to negotiate them with the retirees without EEOC participation. (Letter of Andrée M. Peart of April 27, 1998 at 5) EEOC contends that whenever the EEOC files a complaint, control of the litigation thereby passes from the aggrieved employees to the EEOC. We decline, however, to decide this question in the abstract.

Here the action brought by the EEOC had already resulted in a finding by the District Court of liability against the employer. At

this stage of the litigation, the EEOC was, at the very least, a necessary party to any discussions of settlement or other negotiations between J & H and the retirees. The absence of EEOC involvement with respect to the waivers once liability had been found renders them ineffective as a matter of law. *See* 29 U.S.C. § 626(c)(1) ("the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter."); *EEOC v. Johnson & Higgins*, 91 F.3d at 1535 (2d Cir.1996) ("[T]he OWBPA specifically provides that '[n]o waiver agreement may affect the Commission's rights and responsibilities to enforce this chapter.' Accordingly, if the EEOC has the authority to enforce the ADEA where there is no director willing to join the suit (an issue we address below), that authority cannot be altered by a waiver of the rights of a private party—even a private party with a direct interest in the subject of concern to the EEOC." (citations omitted)).

## CONCLUSION

J & H urges that this Court examine each individual waiver and rule on it separately. We find it unnecessary to do this for the general principles discussed herein relate to all of the waivers. For the reasons elucidated above, we deny Defendant's Motion for Summary Judgment as to the issues of consideration and voluntariness. Moreover we determine that the waivers entered into after a finding of liability and without EEOC participation are invalid as a matter of law. The Trial on the issue of damages will commence on October 5, 1998 as previously scheduled.

SO ORDERED.